UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21590-CIV-MARTINEZ

TIEN THANH NGUYEN,

 Petitioner,

v.

TODD LYONS, Acting Director, Immigration
and Customs Enforcement; GARRETT RIPA,
Director, Miami Field Office, Enforcement and
Removal Operations, Immigration and Customs
Enforcement; ACTING SECRETARY, United
States Department of Homeland Security,

 Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Tien Thanh Nguyen's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), [ECF No. 1]. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (*See* [ECF No. 5]). Respondents[1] filed their Response on March 16, 2026 ("Response"), [ECF No. 8], and Petitioner filed his Reply on March 24, 2026 [ECF No. 12]. The Court has considered the briefing and the relevant law and is otherwise fully advised. As explained below, the Petition is **GRANTED.**

---

[1]  Petitioner names as Respondents Todd M. Lyons, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Garrett Ripa, in his official capacity as Director of the Miami Field Office, Enforcement and Removal Operations, Immigration and Customs Enforcement; and Acting Secretary, United States Department of Homeland Security. (*See* Pet. 1). The only proper Respondent is the Miami Field Office Director, Garrett Ripa. *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004) (affirming that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent").

## I.    BACKGROUND

Petitioner Tien Thanh Nguyen, a native of Vietnam, entered the United States on June 15, 1989 under an AM3 visa (child of the mother of an AM1 principal, Section 584(b)(1)(A) and 584(b)(1)(C) of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1988). (*See* AM3 Visa [ECF No. 1-2] 2).

Petitioner encountered U.S. Immigration and Customs Enforcement ("ICE") in November 2006 while serving a three-year sentence for criminal trespass on to farmland with intent to commit a felony and escape from pending felony. (*See* Record of Deportable/Inadmissible Alien [ECF No. 8-2] 2). As a result of his felony conviction, on March 21, 2007, Petitioner was issued a Notice to Appear, charging him removable from the United States. (*See* Notice to Appear [ECF No. 8-9]). After appearing for his removal hearing and declining to apply for relief, an Immigration Judge ordered Petitioner removed to Vietnam on April 16, 2007, and appeal was waived by all parties. (Removal Order [ECF No. 8-3]). But Petitioner was never removed from the United States. On January 29, 2009, ICE released Petitioner from custody on an Order of Supervision ("OSUP"). (*See* Order of Supervision [ECF No. 8-4]). Petitioner alleges that he has remained fully complaint with his OSUP. (Pet. ¶ 22).

In 2008, the United States and Vietnam signed a Memorandum of Understanding ("MOU") allowing for the deportation of certain Vietnamese nationals with final orders of removal who entered the United States after July 1995, under which Petitioner was not eligible for repatriation. (Pet. ¶ 2; 2008 MOU [ECF No. 1-2] 4–22). In 2020, the United States and Vietnam signed a subsequent MOU to accept certain individuals with removal orders who arrived in the United States before July 1995. (Pet. ¶ 2; 2020 MOU [ECF No. 1-2] 23–28). Under the 2020 MOU,

2

individuals must meet specific requirements listed in the MOU before Vietnam will issue travel documents. (*See id.*).

On October 31, 2025, Respondents assert that Petitioner was personally served with a Notice of Revocation of his OSUP and was re-detained.[2] (*See* Notice of Revocation [ECF No. 8-5] 2; Detention History [ECF No. 8-8]). On December 22, 2025, while still in custody, Respondents allege that Petitioner was personally served with a Notice to File Custody Review and afforded the opportunity to present documentation he wished to be reviewed in support of his release, and a Post Order Custody Review was conducted. (Notice to File Custody Review [ECF No. 8-6]). On March 9, 2026, Petitioner was notified of ICE's decision to continue his detention because he failed to demonstrate that he does not pose a danger to the community, or that he is not a flight risk. (Decision to Continue Detention [ECF No. 8-7]). Petitioner remains at Krome North Service Processing Center ("Krome") awaiting the effectuation of his final removal order. (Detention History [ECF No. 8-8]).

Petitioner seeks his immediate release from ICE custody because, he argues, his re-detention violated regulatory and due process requirements and is unlawful under *Zadvydas*. (*See generally* Pet.). Respondents assert that the Court lacks subject matter jurisdiction over Petitioner's claims, Petitioner's *Zadvydas* claim is premature, ICE lawfully detained Petitioner, and ICE's revocation of release comports with its regulations and due process. (*See generally* Resp.).

## II.   LEGAL STANDARD

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674,

---

[2]   Although Petitioner alleges that he was taken into custody on January 8, 2026, the records provided by Respondent show that Petitioner has been detained since October 31, 2025. (*See* Detention History [ECF No. 8-8]).

693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* (citation omitted). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); other citations omitted). Further, the Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## III.   DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release from custody, and Respondents oppose. The Court addresses each argument below.

### A. Subject Matter Jurisdiction

The Court begins with the threshold issue of jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Petitioner proceeds under 28 U.S.C. § 2241, which confers subject matter jurisdiction over "statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. But Respondents argue 8 U.S.C. § 1252(g) applies, depriving the Court of jurisdiction over this case. (*See* Resp. 3–4). As relevant here, § 1252(g) strips courts of jurisdiction over actions "arising from" the decision or action by the Attorney General to "execute removal orders against any alien[.]" 8 U.S.C. § 1252(g) (alteration added).

4

Respondents argue Petitioner effectively is seeking release from detention to prevent the execution of the removal order, thereby implicating § 1252(g), which Respondents claim bars review of challenges to the execution of a removal order, including the government's authority to execute their removal orders. (Resp. 3–4). Ultimately, however, Petitioner does not challenge "ICE's ability to detain him in order to deport him. Rather, he challenges ICE's ability to hold him in detention without adequate process for weeks and months on end." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. May 2, 2025) (concluding subject matter existed (citations omitted)); *see also Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *3–4 (S.D. Fla. July 8, 2025). Such a claim targets the underlying legal bases of ICE's actions, falling squarely within the subject matter jurisdiction of this Court.

### B. Due Process Claims: OSUP Revocation and Re-Detention

Petitioner argues his Fifth Amendment right to due process was violated when his OSUP was revoked and he was re-detained. (Pet. 6). Petitioner states that "[r]e-detention of a long-term compliant supervisee requires notice of reasons, opportunity to respond, and consideration of factors bearing on likelihood of removal under 8 C.F.R. § 241.13." (*Id.*). He alleges that the records available "show no notes regarding non-compliance or reasoning behind any DHS decisions to re-detain." (*Id.*). Petitioner argues that he was not notified of the reasons for the revocation of his OSUP and was not provided a meaningful opportunity to submit any evidence or information to show he has not violated his OSUP or that there is no significant likelihood he will be removed in the reasonably foreseeable future. (Reply 6). Respondents argue that Petitioner's OSUP was revoked under 8 C.F.R. § 241.4(l), and he was provided notice and an informal interview, as required. (Resp. 10–13).

Under 8 C.F.R. § 241.4(l)(2), a "district director" or field office director can revoke release when he or she determines that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*; *see also id.* § 1.2 (defining "district director" to encompass field office directors); *Ceesay*, 781 F. Supp. 3d at 160 (clarifying that "Executive Associate Commissioner" means the Executive Associate Director of ICE). "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official . . . [i]t is appropriate to enforce a removal order . . . ." 8 C.F.R. § 241.4(l)(2)(iii).

Here, Petitioner's Notice of Revocation does not state the specific reasons why Petitioner's OSUP why revoked. Instead, it simply states that the "decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." [ECF No. 8-5]. This boilerplate language is insufficient. *See Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 757–58 (S.D. Tex. 2008) (interpreting 8 C.F.R. section 241.4(d) — which requires ICE to "briefly set forth" reasons for a continued detention — and observing that "[c]onclusory statements that removal is 'expected in the reasonabl[y] foreseeable future' . . . with no factual basis or explanation, teeters dangerously close to a perfunctory and superficial pretense instead of a meaningful review sufficient to comport with due process standards" (alterations added; quotation marks omitted)).[3] ICE does not explain what these changed circumstances are or why removal in the reasonably foreseeable future is likely.

---

[3] Moreover, the record does not show that the Field Office Director "ever made the threshold determination" that revocation was in the public interest, and circumstances did not reasonably permit referral of the case to the Executive Associate Director. *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (citing 8 C.F.R. § 241.4(l)(2)); (*see generally* Resp.).

By arresting and detaining Petitioner without following the requirements of 8 C.F.R. § 241.4, Respondents violated his due process rights. *See Bonitto*, 547 F. Supp. 2d at 757 (explaining that 8 C.F.R. §§ 241.13 and 241.4 "were amended to comply with the Constitutional concerns illuminated in *Zadvydas*" and thus "provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements"). "The proper remedy for such a violation is release."[4] *Rubanov v. Trump*, No. 25-cv-23034, Order Granting Writ of Habeas Corpus [ECF No. 12] filed July 30, 2025 (S.D. Fla. 2025) (granting writ of habeas corpus and ordering release after ICE arrested and detained the petitioner without following the requirements of 8 C.F.R. §§ 241.13 and 241.4) (citing *Munaf*, 553 U.S. at 693).[5]

### C. Attorney's Fees and Costs

In his general prayer for relief, Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). (Pet. 7). Under the EAJA, "[a] party that prevails against the United States in a civil action is entitled, in certain circumstances, to an award of attorney's fees, court costs, and other expenses." *Melkonyan v. Sullivan*, 501 U.S. 89, 91 (1991) (citing 28 U.S.C. § 2412). The statute extends to prevailing parties in civil actions against "any agency or any official of the United States acting in his or her official capacity[.]" 28 U.S.C. § 2412(a). Habeas corpus petitions are civil actions. *See, e.g., Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("Our decisions have consistently recognized that habeas corpus proceedings are civil

---

[4] Because the Court finds that Petitioner must be released, it need not consider Petitioner's argument that his detention beyond the removal period violates the Due Process Clause under *Zadvydas* or Petitioner's request for a temporary restraining order. *See Grigorian*, 2025 WL 2604573, at *10 n.7.

[5] To be clear, Petitioner may still be detained and removed after his release, and his reinstated OSUP may be revoked. However, any detention, removal, or OSUP revocation must comport with the Due Process Clause and ICE's regulations.

in nature." (citation omitted)); *see also Ex parte Tom Tong*, 108 U.S. 556, 559 (1883) ("The writ of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty . . . . Proceedings to enforce civil rights are civil proceedings[.]")

To be eligible for fees under the EAJA, "the prevailing party must submit to the court an application for fees and expenses 'within thirty days of final judgment in the action.'" *Melkonyan*, 501 U.S. at 91 (quoting 28 U.S.C. § 2412(d)(1)(B)). As the Court rules in Petitioner's favor, Petitioner may apply within 30 days of final judgment showing he is a prevailing party, the amount sought, and that the position of the United States was not substantially justified.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1], is **GRANTED**.

2.     Respondents shall release Petitioner from custody **IMMEDIATELY**, under the terms of Petitioner's prior Order of Supervision.

3.     Respondents shall file a notice with the Court within 48 hours confirming Petitioner's release in compliance with this Order.

4.     The Clerk is directed to **CLOSE** this case.

5.     The Court retains jurisdiction to enforce this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this *30*day of March 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:     all counsel of record

8